IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SUZY ISENBERG | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:07-CV-096-Y |
| | § | |
| CHASE BANK USA, N.A. | § | |

ORDER ON DAMAGES

On April 8, 2009, the Court granted in part and denied in part (doc. #153) plaintiff Suzy Isenberg's motion for reconsideration. The basis of the Court's ruling was that defendant Chase Bank U.S.A., N.A. ("Chase") had provided inadmissible evidence in support of the damages calculations it used in its motion for default judgment. *See United States use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) ("A default judgment is a judgment on the merits that conclusively establishes the defendant's liability. But it does not establish the amount of damages."); *see also United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) ("[A] judgment by default may not be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation."); *see also Lijadu v. INS*, No. 06-0518, 2009 U.S. Dist. LEXIS 15101, *1-4 (W.D. La. Feb. 26, 2009) (assessing summary-judgment-type evidence of damages in default judgment).

Consequently, in the order granting in part Isenberg's motion for reconsideration, Chase was ordered to submit evidence, including a verified military affidavit in accordance with 50 U.S.C. app. § 521, in support of its damages no later than June 12, 2009.  Chase was also ordered to file a brief explaining its

evidence, addressing the adequacy and competence of such evidence, and responding to certain evidentiary arguments made by Isenberg in her motion for reconsideration.  The order provided Isenberg "twenty calendar days from the date Chase files its brief and evidence to respond and voice any objections she has to such evidence." (Doc. #153 at 5.)  Isenberg was warned that should she "fail to timely respond, any objections to Chase's evidence will be deemed waived and a final default judgment will be entered in Chase's favor."  (*Id.* at 5-6.)

Chase timely provided all of the materials set out in the order on Isenberg's motion for reconsideration.  Isenberg was served with a copy of the brief and supporting documents by way of the Court's electronic filing system.  In fact, this is the second time Isenberg has been provided with these documents, as she was provided with them in connection with Chase's original motion for default judgment filed in August 2008.  Consistent with her conduct throughout this case, Isenberg's response was untimely.  She has, therefore, waived any objection to Chase's evidence.

Moreover, even if Isenberg's response were considered it would not change the Court's conclusion that Chase has properly supported its damages claims.  Isenberg argues that Chase's evidence is unauthenticated hearsay and challenges Chase's use of Federal Rules of Civil Procedure 31 and 45 in obtaining documents.  Isenberg complains that Chase used Rule 45 to subpoena documents from non-parties when she was the only proper source of the documents.  The records at issue were subpoenaed from various entities, including

PayPal, Google Merchant, Compass Bank, and Washington Mutual Bank. They are not Isenberg's personal records.  Thus, Isenberg is not the proper person to authenticate them.  And it should be noted that Chase only resorted to subpoenaing documents from non-parties when Isenberg refused to comply with discovery requests.

Rule 45 explicitly contemplates the use of subpoenas in relation to non-parties.  *See* FED. R. CIV. P. (c)(3)(A)(ii) and (e) (discussing the limitations on the use of subpoenas on non-parties).  If Isenberg believed the subpoenas were objectionable, she could have argued that she has a right or privilege in relation to the documents and filed a motion to quash the subpoenas.  *See Ass'n of Am. Physicians & Surgs. v. Tex. Med. Bd.,* No. 5:07CV191, 2008 U.S. Dist. LEXIS 56496, at *4-*5 (E.D. Tex. July 25, 2008) (discussing standing to challenge a subpoena).  Isenberg did not file such a motion and, therefore, waived any objection she could have raised therein.  *See* FED. R. CIV. P. 45(c)(2)(B) (requiring objection to subpoena for documents to be served the earlier of the time specified for compliance or 14 days after the subpoena is served)*; see also Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996) ("The failure to serve written objections to a subpoena within the time specified by Rule 45(c)(2)(B) typically constitutes a waiver of such objections.").

Isenberg also complains that Chase improperly used depositions by written questions in establishing authenticity and the business-records exception to the hearsay rule.  Isenberg argues that she was not afforded an opportunity to object to

3

Chase's direct-examination questions or submit cross-examination questions, as required by Rule 31.

Chase explains that, rather than respond to its written questions, Google Merchant and PayPal provided business-records affidavits. The procedures of Rule 31, therefore, are not relevant to these documents. As for Washington Mutual and Compass Bank, Chase explains that Isenberg was given notice of the depositions and submitted cross-examination questions to these entities. Washington Mutual and Compass bank apparently chose not to respond to Isenberg's questions, but Isenberg never sought to compel their response. Further, Chase did not elicit testimony through the depositions, but used the answers to authenticate documents. Isenberg does not explain why such answers are objectionable. Thus, any deviation from the procedures prescribed by Rule 31 is harmless and does not render the documents inadmissible.

The only objection levied by Isenberg that goes to the merits of Chase's damages calculations is her objection to Chase's inclusion of certain accounts in its damages calculations. But Isenberg's argument is based on the fact that Chase has not produced evidence that these account holders submitted a "dispute letter"--a letter used in Isenberg's scheme to challenge account balances and justify cessation of payments. Chase need not submit this specific piece of evidence in order to be entitled to recover damages. Regardless, Isenberg does not specify which of the account holders listed by Chase are objectionable.

4

Isenberg does not otherwise object to the merits of Chase's damages calculations.  And after a review of the evidence provided by Chase, the Court concludes that Chase has properly supported its damages claims and that such damages are capable of mathematical calculation.  *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (affirming district court's decision not to conduct a hearing on damages but, instead, to base damages on evidence in the record, where the litigation had proceeded for some time and district court had become familiar with the defendant's conduct).  Chase has provided the declaration of Anthony S. Demczak, a Chase operations manager.   Demcsak   used   documents   from   the   entities   Chase subpoenaed, along with Chase's own business records, to determine the damage done to Chase by Isenberg's debt-elimination scheme.

Chase customers who participated in Isenberg's scheme stopped paying  on  their  credit-card  accounts  as  part  of  the  scheme. Demczak multiplied the outstanding balance on these accounts by 2%, the  minimum  monthly  payment  required  by  Chase.   Demczak  then multiplied this figure by six to represent a six-month stream of minimum  monthly  payments  to  arrive  at  $116,990.91,  which  Chase refers to as its "minimum damages."  Six months represents the typical  amount  of  time  between  the  point  when  an  account  holder stops making payments and the point at which the account is written off   as   uncollectible   or   sold   as   a   receivable   to   another institution.

Demczak performed the same basic calculation, replacing 2% with  7%--which  approximates  Chase's  actual  historical  monthly

5

recovery on similar accounts.  This calculation resulted in an actual damages figure of $409,468.19.  Demczak explains his calculations in his declaration, and provides a detailed spreadsheet in support.

Based on the evidence, Chase is hereby awarded actual damages in the amount of $409,468.19.

Chase was awarded punitive damages in the Court's original order granting default judgment (doc. #144).  This was based on the Court's finding that, as part of her debt-elimination scheme, Isenberg engaged in fraudulent and malicious conduct.  Because of this finding, Chase may be awarded punitive damages under Texas Civil Practice and Remedies Code § 41.003.

A review of the record, and particularly the allegations made by Chase, which are now taken as true[1], an award of punitive damages is justified.  The nature of the wrong and the character of the conduct involved support an award of punitive damages.  *See* TEX. CIV. PRAC. & REM. CODE ANN. 41.003 (listing factors to consider in awarding punitive damages).  Isenberg's actions worked to defraud both credit-card holders and credit institutions.  The result was Isenberg's receipt of hundreds of thousands of dollars, while both credit-card holders and credit institutions suffered equivalent losses.  *Philip Morris USA v. Williams*, 549 U.S. 346, 355 (2007) (court may consider harm to plaintiff as well as third parties in assessing the reprehensibility of defendant's conduct and resulting

---

[1] *United States v. Shipco General*, 814 F.2d 1011, 1014 (5th Cir. 1987) (stating after the defendant's default is entered, the plaintiffs well pleaded factual allegations are taken as true).

propriety of punitive damages).  And Isenberg was highly culpable, actively marketing and distributing her scheme.  A non-lawyer, Isenberg provided her customers legal advice along with the scheme, assuring them that her scheme was based on contract law and various federal statutes and that banking and credit institutions were violating the law by lending money, charging interest, and making inadequate disclosures.

And an award of punitive damages will vindicate the public sense of justice and propriety and deter similar schemes.  *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (1981) (noting that a court is to consider the extent to which the defendant's conduct offends a public sense of justice in awarding punitive damages). The scope of Isenberg's scheme warrants an award of punitive damages.

Accordingly, Chase is awarded $116,990.91 in punitive damages. This sum is a reasonable amount of punitive damages as it is far less than the actual damages suffered by Chase as a result of Isenberg's scheme.  *See Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) (discussing the relation between compensatory and punitive damages).

Finally, Chase seeks to have an arbitration award and an award of related attorneys' fees confirmed.  The Court has previously confirmed the August 7, 2006, arbitration award of $24,609.18 in favor of Chase.  Chase is entitled to recover this amount.  Under Isenberg's card-member agreement with Chase, Chase is entitled to reasonable attorneys' fees incurred in pursuing the arbitration

award.   The records provided by Chase indicate that 137.6 hours were expended by attorneys seeking to confirm the arbitration award.   Given the task at issue--researching and briefing a motion for summary judgment for confirmation of the award--this amount of hours is reasonable.   The hourly rate charged by these attorneys varied from $240 for associate-level attorneys to $285 for partners.   Isenberg complains that these rates are to high, but they are reasonable for the time and place that the work was performed--May 2007 through December 2007 in Dallas, Texas.   As a result, Chase is also awarded $34,934 in attorneys' fees.

To summarize, Chase is awarded $409,468.19 in actual damages and $116,990.91 in punitive damages.   The arbitration award of $24,609.18 is confirmed, and Chase is awarded $34,934 in attorneys' fees incurred in pursuing confirmation of the award for a total judgment of $586,002.28.   Under 28 U.S.C. § 1920 and FED. R. CIV. P. 54(d), costs are taxed against Isenberg.   Postjudgment interest shall accrue on the judgment and costs awarded at a rate of 0.48% from the date this judgment is entered on the docket until paid. *See* 28 U.S.C. § 1961.

SIGNED July 14, 2009.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

8